UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELMO CARLISLE, JR.,

       Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                         Case No. 1:05 CV 571

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On December 12, 2005, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred the matter to this Court. (Dkt. #11).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 57 years of age on the date of the ALJ's decision. (Tr. 17). He attended college for two years and also completed training to become a certified addiction counselor. (Tr. 108). Plaintiff worked previously as a retail salesperson and a certified addiction counselor. (Tr. 113).

Plaintiff applied for benefits on October 22, 2003, alleging that he had been disabled since August 21, 2003, due to community acquired pneumonia, diabetes, and poor circulation in his feet and ankles. (Tr. 67-69, 102, 136-38). Plaintiff's application was denied, after which time he requested a hearing before an ALJ. (Tr. 24-66, 139-43). On September 27, 2004, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Roy Welton. (Tr. 210-43). In a written decision dated October 29, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 16-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 7-9). Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).

## **MEDICAL HISTORY**

Plaintiff was diagnosed with diabetes in approximately 1994. (Tr. 199, 218).

On March 20, 2002, Dr. Min Kim reported that Plaintiff was suffering from "poorly controlled" diabetes. (Tr. 144). The doctor reported that Plaintiff was capable of performing work activities, subject to the following limitations: (1) he cannot lift more than 50 pounds; and (2) he cannot work more than 40 hours per week. Dr. Kim further reported that these limitations would be removed once Plaintiff's blood sugar level improves. *Id.* Plaintiff began taking insulin following an October 8, 2003 examination. (Tr. 147).

On March 23, 2004, Plaintiff reported that he experienced occasional dizziness upon waking, but otherwise had no complaints. (Tr. 188). Dr. Metcalfe reported that Plaintiff's diabetes was poorly controlled due to his "non-compliance." (Tr. 189).

Treatment notes dated April 20, 2004, reveal that Plaintiff was "taking [his] meds as directed" and "doing well" with "0 major side effects." (Tr. 186).

Treatment notes dated June 9, 2004, indicate that Plaintiff was "non-compliant" with Dr. Metcalf's diabetes treatment instructions. (Tr. 185).

On July 29, 2004, Plaintiff was examined by Dr. Michael Vredenberg. (Tr. 199-200). Plaintiff reported that he was experiencing "some chest discomfort, described as burning in the right upper chest wall that may occur with or without activity." (Tr. 199). The results of a physical examination were unremarkable, including no evidence of edema in Plaintiff's extremities. *Id.* Plaintiff participated in an EKG examination, the results of which were "unremarkable." (Tr. 200).

On August 23, 2004, Plaintiff participated in a stress echocardiogram examination, the results of which were "normal," with "no ischemic abnormalities or arrhythmia with exercise."

(Tr. 169-77). Plaintiff did exhibit "very poor exercise tolerance" and "relatively low blood pressure," but there was no evidence of cardiovascular abnormality. *Id.*

On August 27, 2004, Plaintiff reported to Dr. Metcalfe's office, complaining of "extreme fatigue." (Tr. 180). Specifically, Plaintiff reported that he was unable to walk ten steps without "feeling like he is going to collapse." Plaintiff was instructed to report to the emergency room. *Id.* The administrative record, however, contains no evidence that Plaintiff complied with this instruction.

On September 17, 2004, Plaintiff reported to Dr. Metcalfe's office, complaining of fatigue, vision problems, and numbness/tingling. (Tr. 178-79). However, Plaintiff then left the office without waiting to be examined by the doctor. (Tr. 179). It was also noted that Plaintiff was "non compliant" with his prescribed diet. (Tr. 178).

At the administrative hearing, Plaintiff testified that he was no longer taking insulin to treat his diabetes. (Tr. 220). When asked whether he monitors his blood sugars, Plaintiff responded, "I do now." *Id.* Specifically, Plaintiff reported that his most recent monitoring revealed that his blood sugar level was "150-something." (Tr. 221). Plaintiff reported that he was unable to work because he was suffering from blurry vision, poor circulation, loss of grip strength, lack of stamina, blackouts, and almost complete inability to walk. (Tr. 221-24).

Plaintiff testified that he can stand for less than 10 minutes and can walk one block. (Tr. 226-27). He reported that with "some breaks and rests," he can sit for six hours of an 8-hour workday. *Id.* Plaintiff testified that he drives, but that he has "to have someone to tell me if the light's green or red." (Tr. 229-31, 235). Plaintiff reported that he performs limited activities around his house, but that the only activity he is incapable of performing is yard work. (Tr. 229-31).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations provide a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

In his decision denying Plaintiff's claim for benefits, the ALJ determined that Plaintiff suffers from the following severe impairments: (1) hypotension, and (2) diabetes mellitus. (Tr. 20). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff could perform his past

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

relevant work as a retail salesperson and certified addiction counselor, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 20-22).

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday (with normal breaks), Plaintiff can stand/walk for 6 hours and can sit for 6 hours; (3) he can ocassionally climb stairs and ramps; (4) he can frequently balance, stoop, kneel, crouch, and crawl; (5) he cannot climb ladders, ropes, or scaffolds; (6) he must avoid concentrated exposure to extremes of heat and cold; and (7) he cannot work around vibrations or at unprotected heights. (Tr. 21). After reviewing the relevant

medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

Vocational expert, Roy Welton, testified that based on Plaintiff's RFC he would still be able to perform his past relevant work as a retail salesperson and certified addiction counselor. (Tr. 239-41). Relying on this testimony, the ALJ concluded that Plaintiff was not disabled.

### a. The ALJ Properly Evaluated the Medical Evidence

On September 22, 2004, Dr. Metcalfe completed a report regarding Plaintiff's limitations. (Tr. 204-07). In this report, Dr. Metcalfe reported that Plaintiff can - without interruption - sit for two hours and stand for one hour. (Tr. 204). The doctor also reported that during an 8-hour workday, Plaintiff can sit for three hours, stand for 30 minutes, and sit/stand for one hour. Dr. Metcalfe also reported, however, that Plaintiff can never walk. The doctor reported that Plaintiff can occasionally lift 10 pounds and can occasionally carry five pounds. *Id.* Dr. Metcalfe further reported that Plaintiff suffered from extreme fatigue, dyspnea on exertion, severe hypotension, and peripheral neuropathy. (Tr. 207). Plaintiff asserts that because Dr. Metcalfe was his treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As the ALJ properly concluded the objective medical evidence fails to support Dr. Metcalfe's opinion. Rather, the medical evidence reveals that when Plaintiff chooses to comply with his physician's instructions his diabetes is well controlled and does not impose on him any limitations which are inconsistent with the ALJ's RFC determination. As the ALJ also observed, Dr. Metcalfe's report is internally inconsistent and contradicts Plaintiff's own testimony. First, Dr. Metcalfe reported that while Plaintiff can continuously stand for one hour, during an 8-hour workday (with normal break periods) he can stand for only 30 minutes. The doctor also reported that while Plaintiff experiences job limiting vision impairments, he can nonetheless drive. Furthermore, Dr. Metcalfe's conclusion that Plaintiff can sit for only three hours during an 8-hour workday contradicts Plaintiff's testimony that he can sit for six hours during an 8-hour workday. In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Metcalfe's opinion.

9

b.  The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's "symptoms and limitations are neither credible to the extent alleged nor supported by the objective evidence of record." (Tr. 22). Plaintiff asserts that the ALJ improperly discounted his testimony that he suffers from work preclusive fatigue and blackouts.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

10

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The Court does not dispute that Plaintiff suffers from severe impairments which impose upon him a certain degree of limitation. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. Moreover, the record contains no evidence that Plaintiff's impairments are sufficiently severe as to produce the pain and limitation alleged. In sum, there exists substantial evidence to support the ALJ's credibility determination.

c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether, in light of his limitations (as expressed in the ALJ's RFC determination), Plaintiff could perform his past relevant work, to which the vocational expert answered in the affirmative. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: August 22, 2006         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge